**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA,

v.

ROBERT C. CORDARO

Defendant.

3:10-CR-075

(JUDGE CAPUTO)

### MEMORANDUM

Presently before the Court is Defendant Robert C. Cordaro's Motion for Bail Pending Appeal. (Doc. 290.) In Mr. Cordaro's *pro se* motion for bail pending appeal, he argues that release from prison is necessary in this case in order to allow him to properly assist his counsel in preparing his appeal to the United States Court of Appeals for the Third Circuit. Thereafter, Mr. Cordaro's counsel filed a brief in support of the *pro se* motion arguing that bail pending appeal is justified because of prosecutorial misconduct that occurred at trial. The Government opposes Mr. Cordaro's request for release from prison during the pendency of his appeal to the Third Circuit. Because Mr. Cordaro has failed to make the necessary showing to warrant bail pending appeal, his motion will be denied.

### I. Background

In June 2011, a jury convicted Mr. Cordaro of conspiracy to commit bribery, bribery (two counts), conspiracy to commit extortion under color of official right, extortion (two counts), conspiracy to commit money laundering, money laundering (three counts), racketeering, conspiracy to commit racketeering, conspiracy to defraud the United States, subscribing and filing materially false tax returns (three counts), and tax evasion (two counts). On January 30, 2012, Mr. Cordaro was sentenced to an eleven (11) year term of imprisonment. At the time of sentencing, Mr. Cordaro requested voluntary surrender, but the Court denied his request and ordered Mr. Cordaro's immediate surrender.

On July 5, 2012, Mr. Cordaro filed a *pro se* motion requesting his release pending appeal due to communication problems with his counsel that prevent him from contributing to the preparation of his appeal to the Third Circuit. The next day, Mr. Cordaro's counsel filed a brief in support of the *pro se* motion. The brief, however, does not identify any communication problems between Mr. Cordaro and his counsel based on Defendant's incarceration. Instead, his counsel asserts that bail pending appeal is mandated in this case because the prosecution improperly asked Mr. Cordaro on cross-examination if the Government's witnesses were lying.

The events complained of by Mr. Cordaro occurred once he took the stand at trial in his own defense. After Mr. Cordaro's counsel asked him a few introductory questions, the following exchange occurred:

> Question: Mr. Cordaro, are you willing and prepared to answer any and all questions the government may have regarding any witness, any document, or any allegation made in this courtroom?
>
> Answer: I am not sure how prepared I am. I am certainly willing. I am here.
>
> Counsel: You may cross-examine.

(*Trial Tr.*, June 16, 2011, 34:9-13.) Thereafter, the prosecution questioned Mr. Cordaro about testimony that had previously been given at trial. For example, Mr. Cordaro was asked if heard the testimony from Michael Pasonik that he gave Mr. Cordaro one thousand dollars ($1,000.00) in cash on two separate occasions. (*Id*. at 45:14-15.) After Mr. Cordaro responded that "Mr. Pasonik never gave me anything," (*Id*. at 46:17), the prosecutor asked if "Mr. Pasonik lied about that." (*Id*. at 46:23.)

Next, Defendant was asked if he heard the testimony from Al Hughes that Mr. Cordaro "demanded $15,000.00 a month from Acker and P.J. McLaine for them to keep their contracts." (*Id*. at 49:16-17.) Mr. Cordaro denied making such a demand. (*Id*. at 49:22-50:6.) The prosecutor then asked if "your testimony is Mr. Hughes lied?" (*Id*. at 50:13.)

2

The next witness Mr. Cordaro was questioned about was Donald Kalina and his claim that he gave Mr. Cordaro thirty thousand dollars ($30,000.00) at Highland Associates. (*Id*. 50:21.) After Mr. Cordaro denied receiving such a payment, the prosecutor asked if "(Mr. Kalina) lied?" (*Id*. at 51:1.) Mr. Cordaro also denied that he called Joseph Ferrario and asked for a cash payment "like the last time." (*Id*. at 54:6-7.) The prosecutor's next question to Mr. Cordaro was whether Mr. Ferrario was lying. (*Id*. at 54:9.)

Mr. Cordaro was then questioned about a confrontation between him and Special FBI Agent April Phillips. (*Id*. at 54:21-55:1.) Mr. Cordaro was asked if Agent Phillips' testimony was "incorrect" and if "she lied." (*Id*. at 55:1-5.) Moreover, when Mr. Cordaro was asked about an entry fee to a golf tournament paid by Marc Boriosi, Mr. Cordaro testified that he was "not going to believe Mr. Boriosi." (*Id*. at 68:18-25.) Thereafter, the prosecutor asked if Mr. Boriosi was lying. (*Id*. at 69:1.)

Mr. Cordaro was also asked if he delivered a box with fifty thousand dollars ($50,000.00) to Shawn Tuffy. (*Id*. at 80:25-81:1.) Mr. Cordaro testified that the box was delivered per Mr. Tuffy's demand. (*Id*. at 81:2.) Mr. Cordaro was then asked if he heard testimony from Mr. Tuffy stating that it was not his demand, and the prosecutor asked if Mr. Tuffy's testimony was a lie. (*Id*. at 81:3-17.)

Mr. Cordaro was also questioned regarding the veracity of James Finan. Specifically, Mr. Cordaro was asked "if Mr. Finan testified here in this trial that you were the one who told him to get rid of Kimball and hire Highland, he would be lying too?" (*Id*. at 123:3-5.) The prosecutor proceeded to ask Mr. Cordaro about whether his brother solicited John Heim for a contribution to "bet on the winning horse after the race is over." (*Id*. at 137:18-19.) Mr. Cordaro testified that such a statement was "so far off anything [his brother] would possibly say." (*Id*. at 137:22-23.) The prosecutor's follow-up question to Mr. Cordaro was if Mr. Heim was also lying. (*Id*. at 138:13.)

The prosecutor also questioned Mr. Cordaro about a telephone conversation he had with Thomas Dubas. (*Id*. at 170:10-20.)  Specifically, Mr. Cordaro was asked if Mr. Dubas told him "he was wasn't going down for you." (*Id*. at 171:11-12.)  After Mr. Cordaro recounted a different version of events from which Mr. Dubas provided, the prosecutor asked Mr. Cordaro if Mr. Dubas was also lying. (*Id*. at 171:13-21.)

Despite the number of questions that the prosecutor posed to Mr. Cordaro about whether the Government's witnesses were lying, no objection was made to the prosecutor's questions.

In opposition to Defendant's motion alleging prosecutorial misconduct in questioning Mr. Cordaro regarding the veracity of the Government's witnesses, the Government argues that: (1) this Court does not have jurisdiction over the action because Mr. Cordaro's appeal has already been docketed in the Third Circuit; and (2) the prosecution's cross-examination of Mr. Cordaro was proper because his counsel opened the door to witness veracity by his direct examination.  As Mr. Cordaro's motion has now been fully briefed, it is ripe for disposition.

## II. Discussion

Under 18 U.S.C. § 3143(b), a defendant who has appealed his conviction is entitled to release pending appeal only if a court finds:

> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released . . .; *and*
>
> (B) that the appeal is not for purposes of delay and raises a substantial question of law or fact likely to result in-
>
> > (i) reversal,
> >
> > (ii) an order for a new trial,
> >
> > (iii) a sentence that does not include a term of imprisonment, or
> >
> > (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal

>    process.

18 U.S.C. § 3143(b)(1).  In *United States v. Miller*, 753 F.2d 19, 22-23, (3d Cir. 1985), the Third Circuit construed the original version of the statute, which is nearly identical to the statute in its present form, as follows:

> [U]nder the criteria established by the 1984 Act which the defendant now has the burden of proving if s/he seeks bail pending appeal, the court must find:
>
> (1) that the defendant is not likely to flee or pose a danger to the safety of any other person or the community if released;
>
> (2) that the appeal is not for purposes of delay;
>
> (3) that the appeal raises a substantial question of law or fact; and
>
> (4) that if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed.

*Miller*, 753 F.2d at 24.

   Before addressing the merits of Mr. Cordaro's motion, it is first necessary to resolve the Government's claim that this Court no longer has jurisdiction in this case because (1) the motion for bail pending appeal has previously been denied, and (2) the appeal has already been docketed in the Third Circuit.  The Government's first argument can be disposed of because, as noted by Mr. Cordaro, he has not previously filed a motion for bail pending appeal.  Instead, at the time of sentencing his request was only for voluntary surrender.

   As to the Government's second argument, Rule 9(b) of the Federal Rules of Appellate Procedure sets forth the appellate rules governing release following a judgment of conviction. Fed. R. App. P. 9(b).  Rule 9(b) provides:

> **(b) Release After Judgment of Conviction**. A party entitled to do so may obtain review of a district-court order regarding release after a judgment of conviction by filing a notice of appeal from that order in the district court, or by filing a motion in the court of appeals if the party has already filed a notice of appeal from the judgment of conviction. Both the order and the review are subject to Rule 9(a). The papers filed by the party seeking review must include a copy of the judgment of conviction.

*Id*. According to the Court of Appeals for the Second Circuit, "nothing in the terms of Rule

9(b) or in its history suggest that a defendant is authorized to move for release pending appeal in the court of appeals in the first instance." *United States v. Hochevar*, 214 F.3d 342, 343 (2d Cir. 2000).

In *United States v. Fraser*, 152 F. Supp. 2d 800, 801-02 (E.D. Pa. 2001), the defendant filed a notice of appeal from the judgment of conviction on April 24, 2000. On June 6, 2000, the defendant, as ordered by the court, self surrendered to an institution designated by the Bureau of Prisons. *See id*. at 802. While in prison, and after his appeal had been docketed by the Third Circuit, the defendant filed a *pro se* motion for bail pending appeal with the district court. *See id*. The Government opposed the motion and argued that Rule 9 of the Federal Rules of Appellate Procedure "requires that the defendant must file the motion for bail pending appeal with the Third Circuit, where he has appealed the judgment of conviction entered by this court." *Id*.

The district court rejected the Government's argument and noted that Rule 9(b) "does not authorize petitioner to bypass the district court and request a release order directly from the court of appeals." *Id*. at 803. And, because the defendant "never presented a request for release pending appeal to the district court, Rule 9 . . . has no relevance in determining whether the court has jurisdiction to hear defendant Fraser's request for release." *Id*. at 804. Despite determining that the district court had jurisdiction to resolve the defendant's motion for bail pending appeal, the district court, pursuant to 18 U.S.C. § 3143(b)(2), denied the defendant's request because he had been adjudged guilty of a "crime of violence." *Id*. at 805.

As articulated by the *Fraser* court, Rule 9 does not divest the Court of jurisdiction under § 3143. Accordingly, the issue is whether on the merits Mr. Cordaro's request for release pending appeal is warranted under the circumstances of this case.

Mr. Cordaro's motion will be denied for two reasons. First, Mr. Cordaro has failed

to establish by clear and convincing evidence that he is not likely to flee if he were released. Second, and more fundamentally, Mr. Cordaro's request will be denied because his appeal does not present a substantial question of law or fact that is likely to result in the Third Circuit granting him a new trial.

In support of his motion, Mr. Cordaro asserts that he is not a flight risk which "is clearly and convincingly established by his appearance for trial and for sentencing." While it is true that Mr. Cordaro appeared for trial and for sentencing, these events occurred *before* his incarceration commenced. And, based on a review of Mr. Cordaro's *pro se* motion, it is apparent that he is dissatisfied with the conditions of his confinement. In that regard, evidence that Mr. Cordaro appeared at pre-incarceration court proceedings does not convincingly establish that Mr. Cordaro would not pose a flight risk were the Court to grant his release from prison. Specifically, as Mr. Cordaro's dissatisfaction with his confinement is clear, the Court does not find Mr. Cordaro's counsel's reliance on Mr. Cordaro's pre-incarceration conduct as convincing evidence that he would voluntarily return to prison should his appeal ultimately be denied. In reaching this conclusion, the Court does not foreclose the possibility that a defendant could persuasively establish that he or she was not a flight risk in order to justify a release from prison on bail pending appeal in the proper case. In this case, however, it is not clearly and convincingly established that Mr. Cordaro would willingly return to prison should his appeal be unsuccessful. As such, his request will be denied.

Second, Mr. Cordaro's motion will be denied because his appeal does not raise a substantial question of law or fact that will likely result in an order for a new trial. *See* 18 U.S.C. 3143(b)(1). An appeal presents a "substantial question" when the "significant question at issue is one which is either novel, which has not been decided by controlling precedent, or which is fairly doubtful." *United States v. Miller*, 753 F.2d 19, 23 (3d Cir.

1985).  Lack of controlling precedent, however, "does not necessarily make a question substantial, the question may lack merit on its face." *United States v. Johnson*, No. 09-698, 2010 WL 1688547, at *2 (E.D. Pa. Apr. 26, 2010) (citing *United States v. Quiles*, No. 07-391-01, 2009 WL 764306, at *3 (E.D. Pa. Mar. 23, 2009)).  Instead, a question is significant if it is "fairly debatable." *United States v. Smith*, 793 F.2d 85, 89 (3d Cir. 1986).  Also relevant to the instant motion is the well-established rule that when the defendant fails to object to the prosecutor's alleged improper questioning of a witness or the prosecutor's summation statement, the prosecutorial misconduct is reviewed for plain error. *See United States v. Pryor*, 195 F. App'x 65, 71-72 (3d Cir. 2006) (citing *United States v. Moore*, 375 F.3d 259, 263 (3d Cir. 2004)).  And, "'[i]n order to demonstrate prosecutorial misconduct under a plain error standard, the review must reveal egregious error or a manifest miscarriage of justice.'" *Id*. at 72 (quoting *United States v. Brennan*, 326 F.3d 176, 182 (3d Cir. 2003)).

According to Mr. Cordaro, "[d]espite the lack of contemporaneous objection [to the prosecution's questioning and closing argument], there is a 'substantial issue' whether this misconduct constituted plain and reversible error in Mr. Cordaro's case."  Specifically, Mr. Cordaro relies on *United States v. Harris*, 471 F.3d 507 (3d Cir. 2006), for the proposition that it is improper to question one witness whether another witness is lying.  In *Harris*, after police witnesses and the defendant gave incongruous testimony, the prosecutor cross-examined the defendant about whether the police witnesses had lied. *See id*. at 510. During the cross-examination, the prosecutor recounted testimony of the police witnesses that directly contradicted the defendant's testimony and proceeded to ask the defendant if the police officers were lying. *See id*.  However, the defendant did not object to the prosecutor's line of questioning. *See id*.

On appeal, the defendant argued that the prosecutor improperly influenced the jury's

determinations of witness credibility by asking him whether the police witnesses lied in an attempt to convict him. *See id*. at 510-11.  The Third Circuit held that "asking one witness whether another is lying is inappropriate." *Id*. at 511.  In reaching this conclusion, the Third Circuit recognized that "[o]f the federal courts of appeal that have examined the propriety of questions posed to a criminal defendant about the credibility of government witnesses, it is appears nearly all find that such questions are improper." *Id*. (citing *United States v. Thomas*, 453 F.3d 838, 846 (7th Cir. 2006); *United States v. Williams*, 343 F.3d 423, 438 (5th Cir. 2003); *United States v. Sanchez*, 176 F.3d 1214, 1219-20 (9th Cir. 1999); *United States v. Sullivan*, 85 F.3d 743, 749 (1st Cir. 1996); *United States v. Boyd*, 54 F.3d 868, 871 (D.C. Cir. 1995); *United States v. Richter*, 826 F.2d 206, 208 (2nd Cir. 1987); *but see United States v. Williamson*, 53 F.3d 1500, 1523 (10th Cir. 1995)).  Yet, "courts of appeals generally have not reversed a conviction solely because such questions were posed unless opposing counsel specifically objected to them." *Id*.

Despite the Third Circuit's holding that questioning a witness as to whether another witness is lying is improper, "'it is essential . . . to the proper functioning of the adversary system that when a defendant takes the stand, the government be permitted proper and effective cross-examination in an attempt to elicit the truth.'" *Id*. at 512 (quoting *United States v. Havens*, 446 U.S. 620, 626-27, 100 S. Ct. 1912, 64 L. Ed. 2d 559 (1980)). Thus, if the defendant "opened the door by testifying on direct that another witness was lying," questions as to the veracity of this witness would be proper.  *See id*.  Moreover, "it is often necessary on cross-examination to focus a witness on the differences and similarities between his testimony and that of another witness." *Id*.  In addition, the Third Circuit specifically did "not foreclose the possibility that other circumstances may make a question about another witness' veracity appropriate." *Id*.  And, in *Harris*, even though the Third Circuit concluded that the district court erred in permitting the prosecutor to ask the

9

defendant whether police witnesses lied, the Third Circuit found that the error was not plain. *See id*.

In *United States v. Vitillo*, 490 F.3d 314, 325-26 (3d Cir. 2007), the Third Circuit addressed a defendant's claim of prosecutorial misconduct after the defendant was questioned as to whether a law enforcement officer was lying. As in *Harris*, however, the defendant did not object to the prosecutor's questioning. *See id*. Although the Third Circuit acknowledged that the prosecutor's conduct was improper, under the plain error standard, "[t]he prosecutor's questions, while improper, were not prejudicial in light of the overwhelming evidence of [the defendant's] guilt presented at trial." *Id*. at 326 (citing *United States v. Boyd*, 54 F.3d 868, 872 (D.C. Cir. 1995)). Thus, based on the "strong evidence of guilt [that was] unaffected by the prosecutor's misconduct," the Third Circuit affirmed the district court's denial of the defendant's motion for a new trial. *Id*.

Here, in light of *Harris* and *Vitillo*, Mr. Cordaro's appeal does not raise a "fairly debatable" question. In particular, in both *Harris* and *Vitillo*, the prosecutor improperly asked the defendant whether prosecution witnesses were lying. Even with this improper questioning, though, the Third Circuit concluded in both cases that the misconduct did not constitute error, when, as the case is here, the defense did not object to the prosecutor's questioning. And, like the evidence presented in *Vitillo*, strong supporting evidence of Mr. Cordaro's guilt was presented by the Government at trial that was not impacted by any perceived prosecutorial misconduct. *See Vitillo*, 490 F.3d at 326.

In addition, Mr. Cordaro and the Government strongly dispute whether the direct examination of Mr. Cordaro opened the door to the prosecutor's line of questioning. As quoted above, Mr. Cordaro was asked on direct examination whether he was "willing and prepared to answer any and all questions the government may have regarding *any witness*, any document, or *any allegation made in this courtroom*?" (*Trial Tr.*, June 16, 2011, 34:9-13)

(emphasis added). Thereafter, the prosecutor asked Mr. Cordaro about specific events which had been testified to by Government witnesses, and which Mr. Cordaro generally denied having occurred. While at times during cross-examination the prosecutor asked Mr. Cordaro whether the witness was lying before Mr. Cordaro denied the factual allegations recounted by the witness, for the most part, the prosecutor asked Mr. Cordaro about the events testified by the pertinent witness, and once Mr. Cordaro denied the witness' version of the events, the prosecutor asked Mr. Cordaro whether the witness was lying. Although it may have been better practice for the prosecutor to ask whether the Government's witnesses were wrong or mistaken, as opposed to lying, *see Harris*, 471 F.3d at 512 (citing *United States v. Gaines*, 170 F.3d 72, 81-82 (1st Cir. 1999); *United States v. Gaind*, 31 F.3d 73, 77 (2d Cir. 1994)), where the defendant on direct examination expresses a willingness to answer questions regarding "any witness" and "any allegation" offered in the courtroom, it is not improper on cross-examination to focus the defendant's attention to the testimony of prior witnesses and to elicit testimony from the defendant as to his or her recollection of the same events. Moreover, defense counsel's question, as noted above, could certainly be construed as an invitation to comment on a witness' veracity. While the Government could have elicited this testimony from Mr. Cordaro without asking for his opinion as to whether the other witnesses were lying, based on the direct examination in this case, the Court finds this to be the type of unusual or "other circumstance [where] question[s] about another witness' veracity [were] appropriate." *Harris*, 471 F.3d at 512. As such, the prosecutor's questions to Mr. Cordaro as to whether the Government's witnesses were lying does not raise a substantial question that is likely to result in an order for a new trial. Mr. Cordaro has therefore failed to make the necessary showing for bail pending appeal pursuant to 18 U.S.C. § 3143(b)(1) and his motion will denied.

### III. Conclusion

For the above stated reasons, Mr. Cordaro's request for bail pending appeal will be denied.

An appropriate order follows.


| July 31, 2012 | /s/ A. Richard Caputo |
|---|---|
| Date | A. Richard Caputo<br>United States District Judge |