**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UNITED STATES,** | : |
| | :    **3:10-CR-75** |
| | : |
| **v.** | : |
| | :    **(JUDGE MANNION)** |
| | : |
| **ROBERT CORDARO,** | : |
| | : |
| **Defendant** | : |

## **MEMORANDUM**

### **I.  BACKGROUND**

After being released from prison at FCI Schuylkill, Low Security Camp, located in Minersville, Pennsylvania, to home confinement on June 30, 2020, by the Bureau of Prisons ("BOP") for the service of his remaining 132-month sentence, defendant Robert Cordaro filed, *pro se*, a motion to modify his status to supervised release under the First Step Act, 18 U.S.C. §3624(g)(3). (Doc. 549-1). In particular, Cordaro seeks the court to immediately release him from home confinement at his parents' house in Dunmore, Lackawanna County, Pennsylvania, where he is serving the remainder of his prison sentence to supervised release so that he can obtain employment, provide assistance to his family, and attend family functions.

On September 2, 2020, the court issued an order directing the government to file a response to Cordaro's motion. (Doc. 550).

1

On September 18, 2020, the government filed its brief in opposition to the motion with an Exhibit, namely a copy of the BOP Institutional Referral for Cordaro's Community Corrections Center ("CCC") Placement. (Doc. 551 & Doc. 551-1). In particular, on May 5, 2020, the warden at FCI Schuylkill referred Cordaro for placement in pre-release custody, with a recommended start date of January 25, 2021.

Cordaro filed his reply brief on September 21, 2020, (Doc. 552), and Exhibits, (Doc. 553), namely, copies of receipts for his BOP administrative remedy appeals regarding his March 23, 2020 request for a residential reentry center referral and his May 19, 2020 reduction in sentence request.

After considering Cordaro's motion and the government's brief, as well as the Exhibits, the court will deny the motion.[1]

---

[1] Since Judge Caputo stated the complete background of this case in his August 18, 2015 Memorandum denying Cordaro's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. §2255, (Doc. 514), since the court stated it in its April 30, 2020 Memorandum, (Doc. 547), and since the government states the relevant background in its instant brief, (Doc. 551), the court does not repeat it herein. Suffice to say that Cordaro is currently serving a 132-month prison sentence that was imposed on January 30, 2012, after a jury convicted him of conspiracy, bribery, extortion, money laundering, racketeering, and tax offenses, which related to his service as a Lackawanna County Commissioner and to his demand for payments from contractors and firms who had or were seeking contracts with the County. Following the service of Cordaro's prison sentence, the court directed that he be placed on a 3-year term of supervised release.

## II.     DISCUSSION

Although the warden at FCI Schuylkill recommended Cordaro be placed in pre-release custody beginning on January 25, 2021, the Director of the Bureau of Prisons placed Cordaro in home confinement, starting on June 30, 2020. In his present motion, Cordaro requests the court terminate his sentence early, by about 10 months, and he seeks his immediate transfer from home confinement to supervised release.

The government argues that despite the fact that Cordaro was eligible for pre-release custody, "the decision about whether he is eligible to be transferred from a term of home confinement to early commencement of supervised release is consigned exclusively to the Director of the Bureau of Prisons as a matter of post-sentence administration." In effect, it points out that Cordaro "is asking the Court to reduce his 132-month sentence by allowing him to commence his term of supervised release before it would otherwise start", and it contends that "[t]he Court does not have the authority to modify Cordaro's sentence for this reason."

No doubt that "[t]he discretion to release a prisoner to home confinement lies solely with the Attorney General." United States v. Logan, 2020 WL 2559955, *2 (W.D. N.C. May 20, 2020). *See also* 18 U.S.C. §3621 (the BOP is provided with the sole authority and discretion to designate the place of a defendant's confinement). Nor does a defendant have a constitutional right to placement in any particular prison. *See* Leaphart v. Palakovich, 2011 WL 7070957, *10 (M.D. Pa. Dec. 12, 2011) ("well-settled

3

law establishes that prisoners have no inherent constitutional right to placement in any particular prison, to any security classification, or to any particular housing assignment.") (citing Olim v. Wakinekona, 461 U.S. 238, 245, 103 S.Ct. 1741 (1983)).

Moreover, as the court in U.S. v. Turner, 689 F.3d 1117, 1120 (9th Cir. 2012), explained:

> Pursuant to §3624(a), "[a] prisoner shall be released by the Bureau of Prisons on the date of the expiration of the prisoner's term of imprisonment...." This language dovetails with §3621(a), which provides that "[a] person who has been sentenced to a term of imprisonment ... shall be committed to the custody of the Bureau of Prisons *until the expiration of the term imposed*...." (emphasis added). As used in §3624(a), "term of imprisonment" refers to the sentence imposed by the sentencing judge. *See* Barber v. Thomas, [560] U.S. [474], 130 S.Ct. 2499, 2506, 177 L.Ed.2d 1 (2010). Under normal circumstances, a prisoner is released from the Bureau of Prisons' custody "on the date of the expiration of the prisoner's *term of imprisonment*, less any time credited...." §3624(a) (emphasis added).

The court in Turner, *id.*, also discussed supervised release under 18 U.S.C. §3624(e) and stated:

> In imposing a term of imprisonment for a felony or misdemeanor, a court "may include as a part of the sentence a requirement that the defendant be placed on a term of supervised release after imprisonment...." §3583(a). "A prisoner whose sentence includes a term of supervised release after imprisonment shall be released by the Bureau of Prisons to the supervision of a probation officer who shall, during the term imposed, supervise the person released to the degree warranted by the conditions specified by the sentencing court." §3624(e). A term of supervised release "commences on the day the person is *released from imprisonment*." *Id.* (emphasis added).

4

*See also* U.S. v. Neuhauser, 745 F.3d 125, 127 (4th Cir. 2014) ("Under §3624, a defendant's 'term of supervised release commences on the day the person is released from imprisonment.'" 18 U.S.C. §3624(e). Ordinarily, the BOP releases a prisoner from confinement upon the expiration of his criminal sentence. *See id.* §3624(a).").

However, the First Step Act, 18 U.S.C. §3624(g)(3), provides:

> Supervised release. If the sentencing court included as a part of the prisoner's sentence a requirement that the prisoner be placed on a term of supervised release after imprisonment pursuant to section 3583, *the Director of the Bureau of Prisons* may transfer the prisoner to begin any such term of supervised release at an earlier date, not to exceed 12 months, based on the application of time credits under [18 U.S.C.] section 3632. (emphasis added).

As such, Cordaro's "term of supervised release 'commences on the day [he] is released from imprisonment[,]' which, in turn, occurs when "[he] is released from the Bureau of Prisons' custody." U.S. v. Aholelei, 2017 WL 6559756, *6 (D. Hi. Dec. 22, 2017) (citation omitted).

Based on the above sections, the court finds that the BOP has the authority over Cordaro's motion to modify his sentence under First Step Act, 18 U.S.C. §3624(g)(3), and to terminate his sentence early and transfer him to supervised release. It is abundantly clear that the decision of whether a prisoner, like Cordaro, is eligible for early transfer to his term of supervised release is one within the authority of the BOP and not the court. Cordaro cites to no case law to support his contention that the court, rather than the

5

BOP, has the power to transfer a prisoner to begin his term of supervised release before he has fully served his term of imprisonment.

As such, Cordaro's motion for the court to modify his sentence of confinement to allow him to begin his supervised release early will be denied since 18 U.S.C. §3624(g)(3) authorizes the BOP to make this determination.[2]

Additionally, Cordaro submitted two Exhibits pertaining to prior requests he made to the BOP on other issues before he was released to home confinement to support his contention that the BOP failed to respond to his administrative remedy appeals in those instances and to show that the exhaustion requirement is futile. Based on his allegations that the BOP failed to respond to his unrelated appeals, he requests the court to circumvent the "broken and abused" BOP administrative remedy process regarding his instant request for early release from home confinement and immediate placement on supervised release. Nonetheless, Cordaro does not claim that he has submitted a request to the BOP for his early transfer to supervised

---

[2]Similarly, with respect to a prisoner's motion for the court to order the BOP to deem him eligible for immediate home confinement designation under the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. 116-136, §12003, courts do not have authority to grant this request for relief and order the BOP to release a prisoner to home confinement. *See* United States v. McCann, 2020 WL 1901089, *3 (E.D. Ky. April 17, 2020) ("While the CARES Act gives the BOP broad discretion to expand the use of home confinement during the COVID-19 pandemic, the Court has no authority under this provision to order that a prisoner be placed on home confinement.") (citation omitted).

release under 18 U.S.C. §3624(g)(3). Nor does Cordaro cite to any case law to support his claim that exhaustion is not required in this case.

Further, to the extent Cordaro compares his instant motion to a motion for compassionate release under 18 U.S.C. §3582(c)(1)(A)(i), and alleges that its exhaustion requirement is "a claim processing rule" and is "non-jurisdictional", and that equitable exceptions apply, courts have found that exhaustion under §3582(c)(1)(A)(i) is mandatory and that no exceptions apply. *See* United States v. Davidson, 2020 WL 4877255, *5 (W.D. Pa. Aug. 20, 2020) (holding that the court must "confirm that exhaustion is satisfied because [the Third] Circuit has held that §3582(c)(1)(A)'s exhaustion requirement is mandatory.") (citing United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) (mandating "strict compliance" with §3582(c)(1)(A)'s exhaustion requirement)).

## III. CONCLUSION

Based on the foregoing, Cordaro's motion for the court to immediately transfer him from home confinement to supervised release under 18 U.S.C. §3624(g)(3), **(Doc. 549-1)**, will be **DENIED** since the authority to make this determination lies with the BOP Director and not the court. An appropriate order will follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: October 14, 2020**
10-75-02